**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**CASE NO.: 4:21-cv-10064-JLK**

SPOTTSWOOD COMPANIES, INC.,
a Florida Corporation,

Plaintiff,

v.

MARSH USA, INC., a Delaware
corporation, and MARSH &
McLENNAN AGENCY LLC, a
Delaware limited liability company,

Defendants.
_______________________________________/

## AMENDED COMPLAINT

Plaintiff, Spottswood Companies, Inc. ("Spottswood"), by and through undersigned counsel, hereby sues Defendants, Marsh USA, Inc. ("Marsh") and Marsh & McLennan Agency LLC ("M&M"), and states:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Spottswood Companies, Inc. (hereinafter "Spottswood"), is a Florida corporation with its principal place of business in the State of Florida. Spottswood specializes in real estate development, management and hospitality based out of 506 Fleming Street, Key West, Monroe County, Florida 33040.

2. Defendant Marsh USA, Inc. (hereinafter "Marsh") is a corporation organized under the laws of the State of Delaware but is registered to conduct business in Florida and maintains an office at 200 Biscayne Blvd, Suite 950, Miami, Florida 33131. At all times material to this action, Marsh was providing insurance and risk management services to the Plaintiff.

3. Defendant Marsh & McLennan Agency LLC (hereinafter "M&M") is a limited liability corporation organized under the laws of the State of Delaware but is registered to conduct

business in Florida and maintains offices in Florida, including at 9850 Northwest 41st Street, Suite 100, Miami, Florida 33178. At all times material to this action, M&M was providing insurance and risk management services to the Plaintiff.

4. This Court has jurisdiction over this action pursuant to section 48.193, Fla. Stat., because the Defendant operates, conducts, engages in, and carries on business or business ventures in this State. Defendant engaged in substantial and not isolated activities in this State. Moreover, Marsh has agents and representatives, and maintains an office in this State, and Defendant committed tortious acts within this State.

5. Venue is proper in this Judicial District pursuant to sections 47.011, 47.041, and 47.051, Fla. Stat., because events giving rise to this action occurred in this County, and Plaintiff is headquartered in and conducts business in this County. The relationships, transactions and communications between the parties took place in in Monroe County, Florida, the properties at issue are located in Monroe County and the losses suffered by Plaintiff were incurred Monroe County, Florida.

## ALLEGATIONS COMMON TO ALL COUNTS

6. Marsh and M&M are global insurance brokerage and risk management firms. Marsh and M&M hold themselves out as experts in the field of insurance and risk management consulting, with a particular expertise in evaluating the necessary and appropriate insurance coverage needs of their clients, procuring the appropriate insurance policies, assessing the needs of their clients, recommending insurance products and policies, and managing the risk of its clients to preserve and protect their assets, businesses, income, processes, and reputations.

7. In like fashion, Marsh and M&M represented to Spottswood that they were skilled insurance brokerage and risk management firms and able to properly procure, review and recommend the necessary and appropriate insurance coverage for Plaintiff.

8. At all times material, and in exchange for monetary compensation, Defendants Marsh and M&M acted as Plaintiff Spottswood's agents, advisors, risk managers and/or fiduciaries in obtaining, procuring, and advising on insurance matters for its businesses and properties, and did so for a fee paid by Plaintiff.

9. In exchange for payments made directly to Defendants Marsh and M&M, as well as the right to retain commissions from insurers for placing said insurance, Marsh and M&M agreed to act as Plaintiff Spottswood's agent and risk manager and in this capacity, review Plaintiff's insurance needs, risks and businesses, and make recommendations to and procure for the Plaintiff appropriate insurance products to protect the businesses from any and all insurable losses.

10. Plaintiff Spottswood reasonably relied upon the skill and expertise of Defendants Marsh and M&M in advising and procuring insurance to protect its assets, income and businesses during which the parties were engaged in a fiduciary relationship.

11. During the time period commencing December 1, 2019, Plaintiff had ongoing meetings and communications with Marsh and M&M for the purpose of having them procure, obtain, and secure the necessary and appropriate insurance coverages for Spottswood and advise as to the sufficiency of existing coverages and availability of coverages that Plaintiff needed.

12. Subsequent to December 1, 2019, Marsh and M&M performed these functions pursuant to an oral agreement as there was no written contract or Client Services Agreement (CSA) between the parties in existence subsequent to December 1, 2019.

13. At all times material, Defendants Marsh and M&M knew the nature and extent of Plaintiff Spottswood's businesses and dependence upon tourism and hospitality revenues to sustain its business. They were fully aware of the nature, locations, and business models of the Plaintiff's properties and businesses.

14. In January 2020, representatives and agents from Marsh and M&M, including Marsh Senior Vice President Patrick Healy, were present in Monroe County to meet with the Plaintiff's principals and agents, tour the insured properties, and discuss Plaintiff's insurance needs.

15. Prior to, during and following the January 2020 meeting, Plaintiff represented to Marsh and M&M that they were engaging Marsh and M&M for the purpose of acquiring business interruption insurance to insure Plaintiff against all events which could cause a suspension of the Plaintiff's operations, to the extent such coverage was available.

16. Marsh and M&M knew of the nature of Plaintiff's businesses and assets which information was to be used to ascertain and provide for Plaintiff's insurance needs and risks. Plaintiff was relying on Marsh and M&M to advise Plaintiff as to the necessary and adequate insurance coverage for the assets and business structure of Spottswood. Among the coverages sought by Spottswood was an All-Risk policy under which the insurer would cover all losses resulting from any business interruption.

17. Previously Marsh and M&M procured an All-Risk insurance policy from Zurich American Insurance Company ("Zurich"), for the policy period December 1, 2019 through December 1, 2020, naming Spottswood as the insured to protect Spottswood against a loss of business income due to a suspension of the company's operations. The All-Risk Policy covers all covered losses unless specifically excluded. Consistent with the all-risk nature of the policy, Zurich specifically agreed to pay for all losses caused by "direct physical loss unless the loss is excluded or limited in this policy."

18. Plaintiff paid a substantial premium to purchase the All-Risk Policy through Marsh and M&M in excess of $216,000. It was Plaintiff's understanding that the "All-Risk" policy covered all losses other than flood and windstorm, which is precisely why Plaintiff paid the substantial premiums.

19. On and after December 1, 2019, Defendants Marsh and M&M were aware that the policies it had placed for the Plaintiff did not provide any protection from losses caused by viruses, disease, epidemics, pandemics or civil authority or government closures that resulted in lost profits due to viruses, disease, epidemics or pandemics.

20. A pneumonia of unknown origin was first reported to the World Health Organization ("WHO") on December 31, 2019. China provided the genetic sequence for what has become known as the 2019 Novel Coronavirus on or about January 12, 2020. The WHO recognized on January 25, 2020 that the 2019 Novel Coronavirus is a "global threat to human health . . .". On January 30, 2020, the Director of WHO declared the 2019 Novel Coronavirus outbreak a "Public Health Emergency of International Concern." The disease caused by the 2019 Novel Coronavirus was identified as "COVID-19" on February 11, 2020. On March 11, WHO characterized COVID-19 as a pandemic. WHO saw "alarming levels of spread and severity, and

the alarming levels of inaction." WHO representatives stated: Pandemic is not a word to use lightly or carelessly . . . [w]e have never before seen a pandemic sparked by a coronavirus. This is the first pandemic caused by a coronavirus. And we have never before seen a pandemic that can be controlled, at the same time. The pandemic spread from China to surrounding countries and then to Italy, Iran, Spain and across the globe.

21. The Center for Disease Control ("CDC") has stated that a "pandemic is a global outbreak of disease. Pandemics happen when a new virus emerges to infect people and can spread between people sustainable. Because there is little to no pre-existing immunity against the new virus, it spreads worldwide."

22. On March 20, 2020, Monroe County issued Executive Order 20-02 which expressly closed the county to all tourists and leisure visitors and prohibited all lodging establishments from accepting reservations. Pursuant to this order, all hotels, short term vacation rentals and time shares were to cease renting to tourist effective immediately.

23. On March 30, 2020, the Governor of Florida signed Executive Order 20-91, ordering the closure of all non-essential businesses as part of the "Safer at Home" initiative to stop the spread of COVID-19.

24. These civil authority actions restricted and prohibited access to numerous Spottswood properties – including its hotels, timeshares, restaurants, marinas, and commercial properties.

25. The Civil Authority Actions issued in response to the COVID-19 emergency prohibiting public access to the covered premises and the surrounding area were issued in response to dangerous physical conditions and caused a suspension of business operations at the Spottswood businesses and loss of revenue and profits at their properties.

26. As a result of COVID-19 and the above alleged actions taken by governmental authorities in response to COVID-19, Plaintiff suffered a suspension of business operations, sustained losses of business income, and has incurred extra expenses.

27. At all times subsequent to December 1, 2019, Defendants Marsh and/or M&M knew that the "all-risk" policy it had placed for the Plaintiff excluded losses for business interruption for illness, disease, virus, epidemic and pandemic.

28. At all times subsequent to December 1, 2019, Defendants Marsh and/or M&M were aware of business interruption insurance coverage available to insure against the losses set forth herein and in paragraph 25, *supra*. Including such losses as would flow from a virus, pandemic and/or business closure or limitation order from a governmental entity.

29. At no time subsequent to December 1, 2019 did Defendants Marsh or M&M advise the Plaintiff of available coverage for losses as a result of illness, disease, virus, epidemic or pandemic and/or government closures or orders that would causes losses to the Plaintiff's businesses as a result thereof.

30. At all times subsequent to December 1, 2019, had Defendants Marsh and/or M&M made available such coverage for illness, disease, virus, epidemic and/or pandemic, Plaintiff would have purchased such insurance.

31. On May 5, 2020, Spottswood sent a Formal Notice of Claim to Zurich as a result of COVID-related business losses.

32. Zurich denied Spottswood's claim contending that a direct physical loss has not occurred and that the claim is excluded under certain exclusions contained in the All-Risk Policy.

33. Plaintiff Spottswood brought suit against Zurich for declaratory relief seeking coverage for losses incurred due to COVID-19 and the resulting civil authority and orders from local and state government.

34. On June 10, 2021, the United States District Court for the Southern District of Florida granted Defendant Zurich's Motion for Judgment on the Pleadings and dismissed Plaintiff's Complaint with prejudice, finding that there was no applicable insurance coverage under the "All-Risk" policy.

35. Although Marsh had procured and received the All-Risk Policy issued by Zurich before the losses were incurred, Marsh and M&M failed to review and advise Spottswood as to the extent or limits of coverage afforded to insureds by the All-Risk Policy or the terms of coverage, including exclusions of which it was aware.

36. Therefore, prior to discovery of the claim, Marsh and M&M failed to advise Spottswood that there was no coverage under the All-Risk Policy for losses incurred due to

business interruption arising from a suspension of the company's operations caused by order of civil or military authority that prohibits access to its location, such as the Coronavirus.

37. Marsh never advised Spottswood that they would have no coverage in the event of losses caused by a virus, disease, or pandemic.

38. Marsh and M&M never advised Spottswood of the availability of pandemic insurance.

39. Marsh and M&M never advised Spottswood that the "All-Risk" policy it procured and sold to Spottswood excluded any losses caused by viruses or disease or that other coverage was available to cover such losses.

40. Marsh and M&M knew that there had been prior diseases and pandemics that had caused losses to businesses, and that insurance was available on the market, yet never so advised Spottswood or made such coverage available to them.

41. Marsh and M&M did not procure or place any coverage for any and all losses of Spottswood which were the result of business interruption and/or suspension due to the Coronavirus.

**Count I**

**NEGLIGENCE AGAINST MARSH**

42. Spottswood reasserts and realleges the allegations in paragraphs 1 through 41 as if set forth in full herein.

43. This is an action for negligent failure to procure insurance coverage, failure to advise of available coverage and failure to advise the Plaintiff that losses were excluded by Spottswood against Marsh.

44. Marsh sold Spottswood the All-Risk Policy with Zurich and communicated and represented to Spottswood that the Policy properly covered Spottswood's business losses.

45. During the relevant period herein, commencing December 1, 2019, as Spottswood's insurance broker, agent, and risk manager, Marsh owed Spottswood a duty to:

a. use reasonable care, skill and diligence to obtain and procure necessary and adequate insurance coverage for the losses described herein as requested by Spottswood and/or were clearly warranted;

b. exercise due care in correctly informing and advising Spottswood as to the exact terms of the All-Risk Policy with respect to coverage and exclusions;

c. exercise due care in seeking and/or procuring pandemic, disease, virus or other insurance to protect the assets and income of the Plaintiff and/or so advise the Plaintiff of the availability of such insurance coverage; and

d. exercise reasonable care by advising Spottswood of the availability or non-availability of insurance coverage for the losses described herein as clearly warranted.

46. As Spottswood's insurance broker, agent and risk manager, Marsh undertook a duty to adequately advise of, procure, and obtain sufficient and necessary insurance coverage to protect Spottswood's business from losses incurred as a result of business suspension and/or interruption, for which it sought and/or needed coverage.

47. Once it became aware of the potential for a pandemic or epidemic, in this case the Coronavirus/COVID-19, Marsh owed the Plaintiff a duty of care that included advising that the policies it placed for them excluded losses for illness, disease, virus, epidemic and pandemic.

48. Once it became aware of the potential for a pandemic or epidemic, in this case the Coronavirus/COVID-19, Marsh owed the Plaintiff a duty of care that included advising them about the availability of procuring coverage that would provide business interruption loss insurance that was otherwise excluded by the existing policies.

49. Spottswood requested and relied upon the superior advice, skill and expertise of Marsh in seeking and obtaining adequate insurance coverage to meet Spottswood's express

insurance need and believed that it had full coverage for all risk and all losses to its business operations, including business interruption.

50. Marsh breached its duty of care owed to Spottswood by its actions and/or omissions, including, but not limited to, the following:

a. failing to procure, obtain and place necessary and adequate insurance coverage for the losses described herein as requested by Spottswood and/or clearly warranted;

b. failing to properly assess Spottswood's risks, communicate those risks to insurers, and/or procure and or offer adequate and necessary business interruption coverage for such risks;

c. failing to ensure that the All-Risk policy clearly and unambiguously covered the losses described herein and Spottswood's risks with respect to its business;

d. failing to review terms of coverage, quotes, and/or binders and advise Spottswood of those terms, which excluded coverage for illness, disease, viruses, epidemics and pandemics, including COVID-19;

e. failing to offer or procure pandemic, disease or virus loss coverage or so inform Spottswood of the availability of said coverage;

f. failing to inform and advise Spottswood of the availability and non-availability of adequate insurance coverage to meet Spottswood's express insurance needs; and

g. failing to inform and advise Spottswood of the exact terms of the All-Risk policy with respect to coverage, including a lack of coverage in the event of losses due to disease, viruses or a pandemic.

51. As a direct and proximate cause of Marsh's negligence, Spottswood has suffered damages resulting from a suspension and/or interruption of its business operations and has sustained losses of business income, which are not covered by the All-Risk insurance policy.

**WHEREFORE**, Spottswood respectfully demands judgment in its favor and against Marsh in an amount in excess of the minimal jurisdictional limits of this Court, along with an award of taxable costs, attorneys' fees, and any other relief that this Court deems just and proper under the circumstances.

## Count II

## BREACH OF FIDUCIARY DUTY AGAINST MARSH

52. Spottswood reasserts and realleges the allegations in paragraphs 1 through 41 as if set forth in full herein.

53. As a licensed insurance broker and risk management consultant, Marsh owed Spottswood a fiduciary duty to act loyally, fairly, diligently and honestly, and to fully and fairly disclose to Spottswood all material facts in the execution of its duties.

54. Spottswood relied upon Marsh's experience and skill as an insurance broker and, consequently, reposed its trust and confidence in Marsh to procure and obtain proper, adequate, necessary, and/or requested insurance coverage and to fully explain the terms of coverage obtained, its insurance benefits, and the availability or unavailability of coverage to Spottswood.

55. Spottswood relied upon the superior skill and knowledge of Defendant MARSH and believed that it had full coverage for all risk and all losses to its business operations, including business interruption insurance.

56. Marsh knew and accepted that Spottswood was relying on Marsh for advice and to protect its interests and its business.

57. Marsh breached its fiduciary duties owed to Spottswood by:

a. failing to procure, obtain, and place necessary and adequate insurance coverage for the losses described herein as requested by Spottswood and/or clearly warranted;

b. failing to properly assess Spottswood's risks, communicate those risks to insurers, and/or procure and/or offer adequate and necessary business interruption coverage for such risks;

c. failing to properly assist Spottswood to evaluate the insurance options prior to binding coverage;

d. failing to solicit quotes for coverage from various insurers to procure and place the best coverage available to meet Spottswood's express insurance needs;

e. failing to offer or procure pandemic, disease or virus loss coverage or so inform Spottswood of the availability of said coverage;

f. failing to review the terms of coverage, quotes, and/or binders and advise Spottswood of those terms, which excluded coverage for illness, disease, viruses, epidemics, and pandemics, including COVID-19;

g. failing to negotiate on Spottswood's behalf with insurers, including Zurich, prior to binding coverage;

h. failing to use its best efforts to procure and place sufficient business interruption coverage for Spottswood prior to agreeing to bind coverage;

i. failing to ensure that the All-Risk Policy clearly and unambiguously covered the losses described herein, including a lack of coverage in the event of losses due to disease, viruses or a pandemic;

j. failing to inform and advise Spottswood of the availability or non-availability of insurance coverage sufficient to meet Spottswood's express insurance needs;

k. failing to advise and notify Spottswood of the exact terms of the All-Risk Policy with respect to coverage, including a lack of coverage in the event of losses due to disease, viruses, or a pandemic; and

l. failing to review the All-Risk Policy on Spottswood's behalf until after the loss was discovered.

58. As a direct and proximate result of Marsh's breaches of fiduciary duties, Spottswood has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Spottswood respectfully demands judgment for damages in its favor and against Marsh in excess of the minimal jurisdictional limits of this Court, along with an award of taxable costs, attorneys' fees, and any other relief that this Court deems just and proper under the circumstances.

## Count III

## NEGLIGENCE AGAINST M&M

59. Spottswood reasserts and realleges the allegations in paragraphs 1 through 41 as if set forth in full herein.

60. This is an action for negligent failure to procure insurance coverage, failure to advise of available coverage, and failure to advise the Plaintiff that losses were excluded by Spottswood against Defendant M&M.

61. M&M sold Spottswood the All-Risk Policy with Zurich and communicated and represented to Spottswood that the Policy properly covered Spottswood's business losses.

62. During the relevant time period herein, commencing December 1, 2019, as Spottswood's insurance broker, agent, and risk manager, M&M owed Spottswood a duty to:

a. use reasonable care, skill and diligence to obtain and procure necessary and adequate insurance coverage for the losses described herein as requested by Spottswood and/or were clearly warranted;

b. exercise due care in correctly informing and advising Spottswood as to the exact terms of the All-Risk Policy with respect to coverage and exclusions;

c. exercise due care in seeking and/or procuring pandemic, disease, virus or other insurance to protect the assets and income of the Plaintiff and/or so advise the Plaintiff of the availability of such insurance coverage; and

d. exercise reasonable care by advising Spottswood of the availability or non-availability of insurance coverage for the losses described herein as clearly warranted.

63. As Spottswood's insurance broker, agent, and risk manager, M&M undertook a duty to adequately advise of, procure, and obtain sufficient and necessary insurance coverage to protect Spottswood's business from losses incurred as a result of business suspension and/or interruption, for which it sought and/or needed coverage.

64. Once it became aware of the potential for a pandemic or epidemic, in this case the Coronavirus/COVID-19, M&M owed the Plaintiff a duty of care that included advising that the policies it placed for them excluded losses for illness, disease, virus, epidemic, and pandemic.

65. Once it became aware of the potential for a pandemic or epidemic, in this case the Coronavirus/COVID-19, M&M owed the Plaintiff a duty of care that included advising them about

the availability of procuring coverage that would provide business interruption loss insurance that was otherwise excluded by the existing policies.

66. Spottswood requested and relied upon the superior advice, skill and expertise of M&M in seeking and obtaining adequate insurance coverage to meet Spottswood's express insurance needs and believed that it had full coverage for all risk and all losses to its business operations, including business interruption insurance.

67. M&M breached its duty of care owed to Spottswood by its actions and/or omissions, including, but not limited to, the following:

a. failing to procure, obtain and place necessary and adequate insurance coverage for the losses described herein as requested by Spottswood and/or clearly warranted;

b. failing to properly assess Spottswood's risks, communicate those risks to insurers, and/or procure and/or offer adequate and necessary business interruption coverage for such risks;

c. failing to ensure that the All-Risk policy clearly and unambiguously covered the losses described herein and Spottswood's risks with respect to its business;

d. failing to review terms of coverage, quotes, and/or binders and advise Spottswood of those terms, which excluded coverage for illness, disease, viruses, epidemics, and pandemics, including COVID-19;

e. failing to offer or procure pandemic, disease or virus loss coverage or so inform Spottswood of the availability of said coverage;

f. failing to inform and advise Spottswood of the availability and non-availability of adequate insurance coverage to meet Spottswood's express insurance needs; and

g. failing to inform and advise Spottswood of the exact terms of the All-Risk policy with respect to coverage, including a lack of coverage in the event of losses due to disease, viruses or a pandemic.

68. As a direct and proximate cause of Defendant M&M's negligence, Spottswood has suffered damages resulting from a suspension and/or interruption of its business operations and has sustained losses of business income, which are not covered by the All-Risk insurance policy.

**WHEREFORE**, Spottswood respectfully demands judgment in its favor and against M&M in an amount in excess of the minimal jurisdictional limits of this Court, along with an award of taxable costs, attorneys' fees, and any other relief that this Court deems just and proper under the circumstances.

## Count IV

## BREACH OF FIDUCIARY DUTY AGAINST M&M

69. Spottswood reasserts and realleges the allegations in paragraphs 1 through 41 as if set forth in full herein.

70. As a licensed insurance broker and risk management consultant, M&M owed Spottswood a fiduciary duty to act loyally, fairly, diligently and honestly, and to fully and fairly disclose to Spottswood all material facts in the execution of its duties.

71. Spottswood relied upon M&M's experience and skill as an insurance broker and, consequently, reposed its trust and confidence in M&M to procure and obtain proper, adequate, necessary, and/or requested insurance coverage and to fully explain the terms of coverage obtained, its insurance benefits, and the availability or unavailability of coverage to Spottswood.

72. Spottswood relied upon the superior skill and knowledge of Defendant M&M and believed that it had full coverage for all risk and all losses to its business operations, including business interruption insurance.

73. M&M knew and accepted that Spottswood was relying on M&M for advice and to protect its interests and its business.

74. M&M breached its fiduciary duties owed to Spottswood by:

a. failing to procure, obtain, and place necessary and adequate insurance coverage for the losses described herein as requested by Spottswood and/or clearly warranted;

b. failing to properly assess Spottswood's risks, communicate those risks to insurers, and/or procure and/or offer adequate and necessary business interruption coverage for such risks;

c. failing to properly assist Spottswood to evaluate the insurance options prior to binding coverage;

d. failing to solicit quotes for coverage from various insurers to procure and place the best coverage available to meet Spottswood's express insurance needs;

e. failing to offer or procure pandemic, disease or virus loss coverage or so inform Spottswood of the availability of said coverage;

f. failing to review the terms of coverage, quotes, and/or binders and advise Spottswood of those terms, which excluded coverage for illness, disease, viruses, epidemics, and pandemics, including COVID-19;

g. failing to negotiate on Spottswood's behalf with insurers, including Zurich, prior to binding coverage;

h. failing to use its best efforts to procure and place sufficient business interruption coverage for Spottswood prior to agreeing to bind coverage;

i. failing to ensure that the All-Risk Policy clearly and unambiguously covered the losses described herein, including a lack of coverage in the event of losses due to disease, viruses or a pandemic;

j. failing to inform and advise Spottswood of the availability or non-availability of insurance coverage sufficient to meet Spottswood's express insurance needs;

k. failing to advise and notify Spottswood of the exact terms of the All-Risk Policy with respect to coverage; and

l. failing to review the All-Risk Policy on Spottswood's behalf until after the loss was discovered.

75. As a direct and proximate result of M&M's breaches of fiduciary duties, Spottswood has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Spottswood respectfully demands judgment for damages in its favor and against M&M in excess of the minimal jurisdictional limits of this Court, along with an award of taxable costs, attorneys' fees, and any other relief that this Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Dated this 11th day of August 2021.

LEIGHTON LAW, P.A.
*Attorneys for Plaintiff Spottswood Companies*
1401 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: (305) 347-3151
Facsimile: (305) 675-0123
Primary E-mails: John@Leightonlaw.com
Max@Leightonlaw.com
Secondary E-mails: Carmen@Leightonlaw.com
Leomarys@Leightonlaw.com

By: /s/ John Elliott Leighton
John Elliott Leighton
Florida Bar No. 507921
Max N. Panoff
Florida Bar No. 84548

-and-

Jay M. Levy, Esq.
Florida Bar No. 219754
*Co-counsel for Plaintiff Spottswood Companies*
JAY M. LEVY, P.A.
9100 South Dadeland Blvd.
Suite 1600
Miami, Florida 33156
Telephone: (305) 670-8100
Facsimile: (305) 670-4827
Primary E-mails: jay@jaylevylaw.com
Secondary E-mails: wendy@jaylevylaw.com
natalie@jaylevylaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 11, 2021, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: /s/ John Elliott Leighton
John Elliott Leighton